UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

UNITED STATES OF AMERICA, ex rel.
FAMILY CLINIC OF NEW ALBANY, et al.                    PLAINTIFFS


V.                                    CIVIL ACTION NO.: 3:21-CV-139-GHD-JMV


CHARTSPAN MEDICAL TECHNOLOGIES; et al.          DEFENDANTS

---

OPINION

---

Presently before the Court is the Defendants Chartspan Medical Technologies and Jon-Michial Carter's motion to dismiss [31] the Plaintiffs' complaint in this *qui tam* matter brought under the False Claims Act. Upon due consideration and for the reasons set forth below, the Court finds the motion should be granted in part and denied in part. The Plaintiffs' individual claims against Mr. Carter will be dismissed, and the Plaintiffs have voluntarily abandoned their conspiracy claim. The Defendants' motion will be denied as to the Plaintiffs' remaining claims against Chartspan.

## I.    Background

The Plaintiffs are a Rural Health Clinic located in Holly Springs, Mississippi, and the two co-owners of the Clinic, one of whom is a licensed Nurse Practitioner [First Amended Complaint, Doc. 37]. The Defendants are a South Carolina-based corporation and its Chief Executive Officer, who offer chronic care management (CCM) services to patients of medical clinics throughout the United States, including to patients of the Plaintiffs' clinic [37].

The Plaintiffs allege the Defendants violated the False Claims Act, 31 U.S.C. §§ 3729-3730 (FCA) and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b)(2) (AKA) by causing the Defendants' clients (medical clinics) to present legally and factually false or fraudulent claims for CCM services to be submitted for payment by Medicare, and by causing the client clinics to use factually false records and statements to be used in the preparation of Medicare claims for CCM services [37, at pp. 42-43].

The Defendants have now moved to dismiss the Plaintiffs' complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [31]. The Plaintiffs have responded in opposition and the motion is ripe for the court's ruling.

## II.     Legal Standard

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555–558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

2

to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a motion to dismiss under Rule 12(b)(6), the court's review is limited to the live Complaint and any documents attached to it. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d at 324).

A Complaint should only be dismissed under Rule 12(b)(6) after affording ample opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena*, 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968); *Collins v. Westlake Financial Servs.*, No. SA-25-CV-00021-JKP, 2025 WL 756205, at *2 (W.D. Tex. Mar. 10, 2025). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought,

a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt*, 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile. *Foman*, 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

In addition, Federal Rule of Civil Procedure 9(b) applies to the pleading of FCA cases because FCA claims are allegations of fraud. *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). Accordingly, "[a]lthough Rule 9(b) allows the elements of a False Claims Act allegation to be averred generally, simple allegations that a defendant possesses fraudulent intent will not satisfy Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). Instead, the plaintiff "must set forth *specific facts* supporting an inference of fraud." *Melder*, 27 F.3d at 1102. While a FCA complaint must state with particularity the circumstances constituting fraud, that standard supplements but does not supplant Rule 8(a)'s notice pleading requirement and it is applied only to the extent necessary to provide defendants with fair notice of the plaintiff's claims. *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). In addition, Rule 9(b) "requires only simple, concise, and direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186.

### III.     Analysis

The Plaintiffs plead two separate legal theories under which they assert the Defendants violated the FCA by causing false claims to be presented by their clinic clients for Medicare payment: (1) that the claims were legally false because the claims resulted from the Defendants' violation of the AKA due to the Defendants offering direct or indirect

remuneration to induce a referral, arrangement, or recommendation regarding CCM services; and (2) that the claims were false under the FCA because the Defendants failed to provide the required level of CCM care to legally submit the claims to Medicare.

The Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health and Human Services (HHS), began reimbursing providers in 2015 for CCM services furnished to Medicare beneficiaries with the goal of improving the health of individuals with two or more chronic conditions. 79 Fed. Reg. 67548, 67715-16 (Nov. 13, 2014). CCM services include such activities as recording patient health information, managing care transitions, assisting patients in accessing preventative care, and maintaining electronic care plans. Medicare Learning Network, MLN909188, *Chronic Care Management Services*, at 4 (May 2024). Eligible providers may submit claims to Medicare for CCM services that have been provided by or on behalf of the provider to a patient for at least 20 minutes per month. *Id.* Medicare permits "clinical staff" to provide these services under the general supervision of the billing medical provider. *Id.* at 4; Medicare Carriers Manual, Part 3 – Claims Process, at 3. Medical providers are not allowed, however, to fully delegate the providing of CCM services to clinical staff – providers must retain a certain level of involvement in order for the CCM services to be properly billed to Medicare. *Id.*

## *Anti-Kickback Act*

The Plaintiffs allege the Defendants violated the AKA because the subject CCM services resulted from an improper referral arrangement. The Defendants argue the Plaintiff's Complaint fails to sufficiently plead an AKA violation because the CCM patients are not "referred" to the Defendants for care; instead, the Defendants argue, the Defendants

5

provided CCM services for a fee, with the Plaintiffs and other medical clinics then billing Medicare for the CCM services.

The Anti–Kickback Act prohibits any person or entity from offering, making, or accepting payment to induce or reward any person for referring, recommending, or arranging for federally funded medical services, including services provided under Medicare and Medicaid. 42 U.S.C. § 1320a–7b(b). The statute includes no requirement of proof that a kickback arrangement harmed patients or resulted in unnecessary procedures, and it imposes liability for payment practices that do not fall within "Safe Harbor" regulations, 42 C.F.R. § 1001.952, so as to remove financial incentives that can result in unnecessary patient care. *U.S. ex rel. Proctor v. Next Health LLC*, No. 4:17-CV-00169-ALM-BD, 2024 WL 4964504, at *2 (E.D. Tex. Nov. 14, 2024); *U.S. ex rel. Daugherty v. Bostwick Laboratories*, No. 1:08-CV-00354, 2012 WL 6593804, at *5–6 (S.D. Ohio, Dec. 18, 2012). The AKA provides that "knowingly and willfully" offering or paying any "remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person – to refer an individual to a person for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program" is unlawful. 42 U.S.C. § 1320a-7b(b)(2).

The Plaintiffs allege, in detail, in their 45-page First Amended Complaint [37], the Defendants violated the AKA by proposing to provide the Plaintiffs and other medical clinics "a new stream of monthly-recurring revenue" and by stating that "in exchange for providing" the clinics "with an opportunity to bill Medicare for CCM services to be performed by [the Defendants]," the clinics would receive "additional revenue [from Medicare] (and keep about half of it)." [37, at pp. 12-13]. In essence, the Plaintiffs allege

6

the Defendants offered to perform CCM services for approximately half the Medicare-billed rate while permitting the Plaintiffs and other clinics to keep the other half of the received funds in exchange for the clinics "referring" their patients to the Defendants for CCM services.

The Defendants argue the Plaintiffs' allegations fail to state a claim because the medical clinics do not "refer" patients to the Defendants for CCM services. Instead, say the Defendants, the arrangement (or proposed arrangement) is simply payment for an outsourced service.

The Court finds, at this juncture, the Plaintiffs have sufficiently set forth specific facts supporting an inference of improper conduct under the AKA and have thus pled adequate facts to state a claim to relief that is plausible on its face as to their AKA theory. The Plaintiffs have sufficiently alleged the Defendants knowingly and willfully offered to pay or paid remuneration directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to refer an individual to a person for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, by allegedly offering to perform CCM services for about half the Medicare-billed rate and to permit the Plaintiffs and other clinics to keep the other half of the received funds, in exchange for the clinics "referring" their patients to the Defendants for CCM services. See, e.g., *Stop Ill. Health Care Fraud LLC v. Sayeed*, 957 F.3d 743, 750 (7th Cir. 2020) (holding that "the definition of a referral under the Anti-Kickback Statute is broad, encapsulating both direct and indirect means of connecting a patient with a provider."). Under the statute and prevailing caselaw, the Court finds the Plaintiffs' allegations in the First Amended Complaint are sufficient at the present juncture to state a

7

claim for relief based on the AKA. 42 U.S.C. § 1320a-7b(b)(2); *U.S. ex rel. Daugherty*, 2012 WL 6593804, at *12 (court denied motion to dismiss based on similar allegations regarding testing urine samples); *U.S. ex rel. Livingston v. Digirad Corp.*, No. 2:18-cv-2025-CLM, 2022 WL 4110897, at *17 (N.D. Ala. Sept. 8, 2022) (court denied summary judgment motion containing similar allegations regarding diagnostic imaging company); *U.S. ex rel. Hockaday v. Athens Orthopedic Clinic P.A.*, 616 F. Supp. 3d 1339, 1361-62 (M.D. Ga. 2022) (orthotic device dealers); *U.S. ex rel. Schiff v. Marder*, No. C20152633, 2015 WL 13264207 (S.D. Fla. May 14, 2015) (medical laboratory). Accordingly, the Defendants' motion to dismiss the Plaintiffs' Anti-Kickback Act-based FCA claim shall be denied.

### *False Claims Act*

The FCA imposes liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A) (2009). The statute further imposes liability on a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government." *Id.* at (a)(1)(G). To satisfy the statute's knowledge requirement, a person must "(1) ha[ve] actual knowledge of the information; (2) act in deliberate ignorance of the truth or falsity of the information; (3) or act in reckless disregard of the truth or falsity of the information," but "no specific intent to defraud is required." *Id.* § 3729(b).

The FCA does not create a private cause of action, but permits a person, designated a "Relator" to bring a civil action "for the person and for the United States government ... in the name of the government." 31 U.S.C. § 3730(b). The Supreme Court has affirmed a

broad reading of the FCA, explaining that "Congress wrote expansively, meaning to 'reach all types of fraud, without qualification, that might result in financial loss to the government.'" *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 129 (2003) (quoting *United States v. Neifert–White Co.*, 390 U.S. 228, 232 (1968)). False claims to Medicare, including Medicare claims for payment are actionable under the FCA. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

As noted above, to succeed on their FCA claims, the Plaintiffs must generally prove the Defendants (1) caused to be made a false claim, (2) which was presented for payment or approval, (3) with knowledge that the claim was false. *See* 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B). Further, a misrepresentation must be material to the Government's payment decision to be actionable under the FCA. See *Universal Health Servs., Inc., v. United States ex rel. Escobar*, 579 U.S. 176, 181 (2016). Claims submitted to Medicare in violation of the AKS are considered false claims under the FCA. *See* 42 U.S.C. § 1320a-7b(g) ("[A] claim that includes items or services resulting from a violation of [the AKS] constitutes a false or fraudulent claim for purposes of ... [the FCA].").

Here, the Plaintiffs aver the Defendants violated the FCA because (1) the Chartspan personnel who performed the subject CCM services were "unlicensed" and "unqualified" to deliver CCM services and did not provide CCM services under the necessary general supervision of a licensed medical provider; (2) the Defendants routinely and falsely represented that Chartspan personnel devoted the required 20 minutes or more per month on CCM services per patient; and (3) the Defendants "fraudulently induced" patients to enroll in CCM services by offering prospective patients prescription discount cards, which

qualify as improper "remuneration" under the prevailing statute (42 U.S.C. § 1320a-7a(a)(5)). Finally, the Plaintiffs aver the Defendant Jon-Michial Carter faces individual liability in his role as Chief Executive Officer of Chartspan because he "personally designed and executed" Chartspan's alleged improper conduct.

The Defendants argue the Plaintiffs have failed to sufficiently state a claim for relief because (1) CCM services may be provided by "auxiliary personnel," who are not required to be medically licensed unless they are performing medical procedures; (2) the 20 minutes of clinical staff time per patient per month Medicare requires for CCM services does not require direct patient contact, and instead can be time spent on tasks such as "recording of patient health information, maintenance of electronic care plans, or coordination and sharing of patient health information;" and (3) the prescription discount cards Chartspan offered to prospective CCM patients are of "nominal value" and thus do not constitute improper "remuneration" in exchange for patients agreeing to receive CCM services provided by Chartspan. The Defendants further argue the individual claims against Defendant Carter fail because the Complaint does not allege a plausible basis for concluding Carter individually violated the FCA.

The Court finds, as discussed below, that the Plaintiffs' Complaint does sufficiently state plausible claims for relief under the FCA against the Defendant Chartspan, and those claims shall proceed at the present juncture. The Court finds, however, the individual claims against the Defendant Carter shall be dismissed for reasons discussed below.[1]

---

[1] The Court further notes that the Plaintiffs have voluntarily conceded their conspiracy claim, and that claim is hereby dismissed.

10

The Plaintiffs aver the Chartspan personnel who provided CCM services were not directly or indirectly providing the services under the required direction and general supervision of a licensed medical provider. [37, at paras. 34-39, 41-42]. The Plaintiffs further aver Chartspan decided to hire unqualified personnel for economic reasons based upon the Defendants' decision to provide CCM services for roughly half of the billed Medicare rate. [37, at para. 40]. While the Defendants argue CCM services may be provided by auxiliary personnel who need not be medically licensed, the Court finds that given the specificity of the Plaintiffs' allegations regarding Chartspan personnel, this ground for potential FCA violations has been adequately pled and is sufficient, at the present juncture, to plausibly state a claim for relief. The Plaintiffs have also adequately pled that Chartspan personnel were not providing the subject CCM services under the necessary direction and general supervision of a medical provider, and have provided sufficient allegations at this stage of the proceedings to move forward on this claim.

Likewise, as for the Plaintiffs' allegation that Chartspan failed to spend the required 20 minutes per month per patient providing CCM services, the Court finds the Plaintiffs' detailed allegations are sufficient to plausibly state a claim for relief under the FCA. The Plaintiffs aver, in detail, that Chartspan personnel did not meet the Medicare standard for CCM services to patients by "routinely fail[ing] to make any actual communication with patients at all during many months," by failing to provide management of patients' chronic conditions, by having "little or no meaningful health-related information" to manage, and by making "identical (or substantially identical) entries . . . into the records of numerous different patients ...". [37, at paras. 43-56]. While the Defendants argue that Chartspan personnel did meet the required threshold by spending at least 20 minutes per month

11

providing CCM services to each patient, the Court finds the Plaintiffs' allegations to be sufficient at the present juncture to plausibly state a claim for relief under the FCA.

Next, the Court considers the Plaintiffs' allegations that the Defendants "fraudulently induced" patients to enroll in CCM services by offering prospective patients prescription discount cards, which the Plaintiffs argue qualify as improper "remuneration" to influence the patient to order or agree to receive CCM services. As is the case with the Plaintiffs' aforementioned allegations, this allegation is pled with a great deal of specificity and detail. [37, at paras. 69-72]. The Plaintiffs have provided the language allegedly used by Chartspan in offering the discount cards, and have alleged the cards, even if in actuality providing little benefit to the patient, were presented to patients in such a way that may have purported to indicate the cards would indeed provide benefits in excess of the strict limits placed by the relevant regulations on such items. While the Defendants argue the cards were of "nominal" value and thus did not violate the FCA or AKS, the Court finds the Plaintiffs' allegations are sufficient at the present juncture to plausibly state a claim for relief.

Finally, the Court considers the individual allegations against the Defendant Jon-Michial Carter. The Plaintiffs allege Carter is liable because he "personally designed, and has executed since 2015, the core business model under which Chartspan" engaged in its allegedly unlawful conduct. [37, at paras. 6, 21]. The Court finds the Plaintiffs' allegations with respect to Mr. Carter individually fail to plausibly state a claim for relief. The Complaint does not allege when or how Mr. Carter presented or caused to be presented a false claim for payment. Nor do the Plaintiffs identify any claims that were presented based upon any specific conduct on the part of Mr. Carter. While the Plaintiffs allege that Mr.

12

Carter "designed and executed" Chartspan's business model, more is required to state a claim under the FCA and AKS. In short, the Plaintiffs' allegations against Mr. Carter are not sufficiently specific to any individual conduct on his part to permit the Plaintiffs' claims against him to proceed. See, e.g., *United States ex rel. Park v. Legacy Heart Care, LLC*, No. 3:16-CV-803-S, 2018 WL 5313884, at *6 (N.D. Tex. Oct. 26, 2018) (holding, in FCA case, that "[i]t is impermissible to lump all defendants together; rather, the complaint must segregate the alleged wrongdoing of one from another."); *In re Parkcentral Glob. Litig.*, 884 F. Supp. 2d 464, 471 (N.D. Tex. 2012); see also *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir. 1986) ("[Plaintiff's] general allegations, which do not state with particularity what representations each defendant made, do not meet [the Rule 9(b)] requirement."). The Plaintiffs' claims against Mr. Carter shall therefore be dismissed.

## IV.    Conclusion

For all of the foregoing reasons, the Court finds the Defendants' motion to dismiss should be granted in part and denied in part. The portion of the Defendants' motion seeking dismissal of the Plaintiffs' claims against the individual Defendant Jon-Michial Carter shall be granted and the individual claims pending against him dismissed; likewise, the Plaintiffs have abandoned and voluntarily dismissed their previously pending conspiracy claim, and that claim is likewise dismissed. The remainder of the Defendant's motion, which seeks dismissal of the Plaintiffs' claims against Chartspan, shall be denied, and those claims shall proceed.

An order in accordance with this opinion shall issue this day.

This, the ____ day of August, 2025.

_____
SENIOR U.S. DISTRICT JUDGE